# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DANPING LI, MELISSA LIU, and LANCE LIU,
    Plaintiffs,

    v.

TRACY GELORMINO and SHEILA
KACZMARCYK
    Defendants.

No. 3:18-cv-442 (MPS)

## MEMORANDUM OF DECISION

Plaintiffs Danping Li, Melissa Liu, and Lance Liu bring this action against Tracy Gelormino and Sheila Kaczmarcyk alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., misappropriation of trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, common law breach of contract and misrepresentation, and violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq.[1] The Defendants move to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and (b)(6). For the reasons explained below, the Plaintiffs have failed to allege facts sufficient to state claims for violations of RICO or the Defend Trade Secrets Act and I decline to exercise supplemental jurisdiction over the Plaintiffs' remaining state-law claims. Accordingly, the motion to dismiss is GRANTED.

## I.    Factual Allegations

The following facts are taken from the Plaintiffs' second amended complaint (ECF No. 27) and are treated as true for the purposes of the motion to dismiss:

---

[1] The Plaintiffs also named Rajiv Sethi as a defendant. They never served Sethi and voluntarily dismissed their claims against him on January 14, 2019. (*See* Motion to Dismiss Claims Against Rajiv Sethi, ECF No. 58.)

Defendant Tracy Gelormino owned a used car dealership, A-1 Auto Sale, LLC ("A-1 Auto") (Second Amended Compl., ECF No. 27 at 1 ¶ 1.) In November of 2015, the Plaintiffs met with Gelormino to discuss the possibility of Melissa Liu's purchasing 50% of A-1 Auto with a loan from Plaintiff Danping Li and assistance from Plaintiff Lance Liu. (*Id.* at 2 ¶ 2–3.)[2] Gelormino explained that the dealership sold "about 40 vehicles" per month with gross profits of $2,000 per vehicle. (*Id.* ¶ 5.) He promised the Plaintiffs that Melissa Liu would earn "a lot of money" if she invested in the business. (*Id.* ¶ 6.) The Plaintiffs ultimately declined to invest because Gelormino demanded that Melissa Liu's payment be made to his wife instead of the dealership's account and because Gelormino made Melissa Liu feel "uneasy." (*Id.* at 3 ¶ 8.)

Over the next two years, Gelormino intermittently contacted Lance Liu and made claims about the profitability of A-1 Auto. (*Id.* ¶ 11.) He told Lance Liu that he had partnered with a "wealthy businessman from India" who "made a lot of money . . . over a two year period" by investing in the dealership. (*Id.* ¶ 10–14.) He explained that, despite the business's profitability, he needed to "get out [of] A-1 Auto because he developed a drone for the FBI with a[] purchase order of close to one billion dollars." (*Id.* ¶ 15.) "By the end of 2017," Gelormino approached Lance Liu about purchasing the assets of A-1 Auto. (*Id.* ¶ 16.) Gelormino told Lance Liu that A-1 Auto owned 29 cars, five of which had mechanical issues. (*Id.* at 4 ¶ 21.) Gelormino represented that he would help the Plaintiffs hire employees and obtain a dealer license "within a couple of months" using his connections at the Department of Motor Vehicles and "at the East Windsor Township." (*Id.* ¶ 19.) He also agreed to serve as a consultant for the successor to A-1 Auto until the successor obtained its own dealer license and tax ID number. (*Id.* ¶ 22.)

---

[2] The Second Amended Complaint states that Lance Liu and Danping Li are Melissa Liu's parents. (*Id.* ¶ 2.) The Plaintiffs reside at the same address (*Id.*)

Melissa Liu agreed to purchase all of A-1 Auto's assets, including its inventory, equipment, and trade name, for $97,000. (*Id.* at 5 ¶ 29.) The timeline in the Second Amended Complaint is unclear. Although the Plaintiffs assert that Gelormino approached them about the asset sale "[b]y the end of 2017," (*Id.* at 3 ¶ 16), they later allege that Melissa Liu entered the purchase agreement on January 25, 2017. (*Id.* at 5 ¶ 29.) Melissa Liu intended to form a new dealership called Windsor Auto. (*Id.*) She agreed that Windsor Auto would take over A-1 Auto's lease with its landlord, Chris Vitti, for $4,000 per month. (*Id.* at 5 ¶ 30–31.) Lance Liu negotiated the asset purchase agreement as Melissa Liu's "agent and guarantor." (*Id.* ¶ 27.) Danping Li loaned money to A-1 Auto so that the dealership could operate until the asset transfer took place. (*Id.* ¶ 28.) Lance Liu acted as Danping Li's "agent" in executing the loan. (*Id.*) Danping Li and Melissa Liu agreed "to pay Plaintiff Lance Liu a portion of their net profits if there [were] any." (*Id.* at 2 ¶ 4.) Lance Liu agreed to "pay a portion of any loss" that Danping Li or Melissa Liu suffered "if they were to be defrauded" by Gelormino. (*Id.* at 4 ¶ 24.)

Gelormino misrepresented the price that A-1 Auto paid for its lease. While Gelormino claimed that A-1 Auto paid $4,000 per month, its lease with Chris Vitti was actually for $3,500 per month. (*Id.* at 5 ¶ 31.) Melissa Liu agreed that Windsor Auto would pay $4,000 based on the misrepresentation, and Gelormino "used the extra $500/month as payback to the landlord for the money Defendant Gelormino stole from Chris Vitti." (*Id.* ¶ 32.)

Gelormino failed to help Windsor Auto to obtain a dealer license. (*Id.* at 5 ¶ 38.) The Plaintiffs could not obtain a license for Windsor Auto because the town of East Windsor lost records relating to the dealership's address, and the town building inspector indicated that it would need to re-build the structures on the property. (*Id.* at 5 ¶ 38.) Chris Vitti suggested that Gelormino should approach Melissa Liu about taking over A-1 Auto while Windsor Auto's

application for a dealer's license was on hold. (*Id.* at 6 ¶ 40.) At Vitti's behest, Gelormino offered to add Melissa Liu as a co-owner of A-1 Auto so that she could operate the dealership without obtaining a new dealer license from East Windsor. (*Id.* ¶ 40–42.) Gelormino promised that he would eventually remove himself as a co-owner and member of A-1 Auto and that he would assist the dealership with car registrations "free of charge" until Melissa Liu became the sole member of A-1 Auto. (*Id.* ¶ 42–43.) He also promised that he would be responsible "for all tax liabilities incurred before plaintiff Melissa Liu obtained her own tax ID for A-1 Auto[,] which she did in mid-August, 2017," and that he would "hold Plaintiffs harmless on past taxes of A-1 Auto." (*Id.* ¶ 43, 45.) The Plaintiffs agreed. (*Id.* ¶ 41.) Gelormino failed to pay sales tax for August 2017. (*Id.* ¶ 46.)

In February of 2017, Gelormino began "embezzling money from A-1 Auto to start his joint business venture with Defendant [Sheila] Kaczmarcyk." (*Id.* ¶ 47.) Gelormino and Kaczmarcyk formed Aerial Platform, LLC on April 14, 2017. (*Id.* ¶ 48.) Gelormino used an office at A-1 Auto to operate the new business without paying rent and listed A-1 Auto's address as the address for Aerial Platform. (*Id.* ¶ 44, 49.)

In June of 2017, Gelormino stole a check from the mailbox of A-1 Auto and deposited it into his or Kaczmarcyk's account. (*Id.* at 7 ¶ 50.) He stole a second check from A-1 Auto's mailbox in July of 2017 and again deposited it into his or Kaczmarcyk's account. (*Id.* ¶ 51.) The Plaintiffs allege that Gelormino "took money repeatedly from A-1 Auto Assets for his personal use and for . . . use by Defendant Sethi and/or Defendant Kaczmarcyk," (*id.* ¶ 54), but they do not provide any specific examples apart from the two stolen checks. Gelormino threatened to ruin the business and the Plaintiffs' reputations if they asked for their money back. (*Id.* ¶ 55.)

At some point "[p]rior to April 14, 2018," Gelormino "offered a cash reward to a former employee of A-1 Auto to steal trade secrets from Plaintiff Lance Liu and from A-1 Auto so that he [could] bring both Plaintiff Lance Liu and A-1 Auto down." (*Id.* at 7 ¶ 60.) Rather than assist Gelormino, the former employee disclosed the offer to Lance Liu. (*Id.* ¶ 62–63.) He called Gelormino and discussed the plan on a speaker phone in Lance Liu's presence. (*Id.*) The Plaintiffs do not explain what trade secrets Gelormino sought to steal, nor do they allege facts showing that Gelormino was successful in his plan.

The Plaintiffs allege, without elaboration, that Kaczmarcyk "worked behind the scene[s] and is also the brain and main beneficiary of Defendant Gelormino's actions." (*Id.* ¶ 68.)

Melissa Liu "lost her money from the A-1 Assets she purchased from Defendant Gelormino." (*Id.* at 7 ¶ 58). Danping Li allegedly lost "loan money" that she provided to A-1 Auto. (*Id.* ¶ 57). Lance Liu "lost compensation" from A-1 Auto and had to pay part of Melissa Liu and Danping Li's losses. (*Id.* at 8 ¶ 66.)

## II.     Legal Standard

Under Rule 12(b)(6), the Court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts the complaint's factual allegations as true, *id.* at 572, and "draw[s] all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). "However, the tenet that a court must accept a complaint's allegations as true is inapplicable to '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements.'" *Gonzales v. Eagle Leasing Co.*, No. 3:13-CV-1565 JCH, 2014 WL 4794536, at *2 (D. Conn. Sept. 25, 2014) (citing *Iqbal*, 556 U.S. at 678). Thus, "[w]hen a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims, it is appropriate to grant [a] defendant['s] motion to dismiss." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004).

## III.  Discussion

The second amended complaint includes five counts: (1) violations of RICO; (2) breach of contract; (3) violations of the Connecticut Unfair Trade Practice Act; (4) misrepresentation; and (5) violations of the Defend Trade Secrets Act of 2016. The Plaintiffs assert that this Court has subject matter jurisdiction under 28 U.S.C. § 1331 because their complaint "aris[es] under the Constitution, laws, or treaties of the United States."[3] I find that the Plaintiffs have not stated a claim for relief under RICO or the Defend Trade Secrets Act, and I decline to exercise supplemental jurisdiction over their remaining state law claims.

### A.  The Plaintiffs Are Not Entitled to Special Consideration as Pro Se Litigants

On March 29, 2019, I took judicial notice of the public bar admission records of the states of New York and New Jersey, which indicate that Lance Liu graduated from the University of Connecticut School of Law in 1999 and is an attorney licensed to practice law in those states. (*See* ECF No. 69). All three Plaintiffs have co-signed the filings relevant to the Defendants' motions to dismiss, including the second amended complaint (ECF No. 27 at 12), memoranda in opposition to the motions to dismiss (ECF Nos. 37 at 1, 64 at 3, 49 at 1), and their RICO Case

---

[3] The Plaintiffs also state that the Court has jurisdiction under 28 U.S.C. § 1345, which provides jurisdiction over actions brought by the United States or its officers, and 31 U.S.C. § 3732, which provides jurisdiction over claims under the False Claims Act. Neither statute is applicable in this case.

Statement required by the Court's standing order (ECF No. 38 at 9). The only email address provided by the plaintiffs—and the one to which all court notices are sent—is that of Lance Liu. (*See* Consent to Electronic Notice, ECF No. 2.) Accordingly, I ordered the Plaintiffs to show cause why all filings co-signed by Lance Liu should not be treated as having been filed by an attorney. (ECF No. 69.) I specifically required that any response "include separate statements by each Plaintiff, under oath, describing the extent to which Mr. Liu participated in preparing the documents that all three Plaintiffs co-signed and filed." (*Id.*)

The Plaintiffs did not file separate statements in response to the order. Instead, they jointly filed (and co-signed) an unsworn response arguing that the Second Circuit case cited in the order to show cause did not apply in this case. (*See* ECF No. 71 at 1 (distinguishing *Harbulak v. Suffolk City*, 654 F.2d 194, 198 (2d Cir. 1981).) While Lance Liu "has been a patent attorney since 1999," they explain, he "is not admitted to practice law in the State of Connecticut and does not/cannot represent any clients before any Connecticut Court of record[]." (*Id.*)  In contrast, they assert, the plaintiff in *Harbulak* had sued in New York and was licensed there. (*Id.*)

The Plaintiffs' argument is unpersuasive. "The scope of the solicitude afforded [to *pro se* litigants] may vary depending on the procedural context and the demands placed by that context upon the inexperienced litigant." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010). Thus, courts may decline to afford extra leniency where even non-lawyer litigants are "experienced in litigation and familiar with the procedural setting presented." *Id.* As the court in *Harbulak* explained, lawyers are not entitled to "the special consideration which the courts customarily grant to pro se parties" because lawyers have "the means and the knowledge, or at least the ability to obtain the knowledge" necessary to pursue their claims. 654 F.2d at 198. The Second Circuit did not suggest that this rule applied only to lawyers proceeding *pro se* in courts where

7

they are admitted to practice, and the court's reasoning applies equally to lawyers proceeding in another jurisdiction. *See Tracy*, 623 F.3d at 102 (2d Cir. 2010) ("The ultimate extension of this reasoning is that a lawyer representing himself ordinarily receives no such solicitude at all."). Accordingly, I will afford Lance Liu no "special solicitude" in evaluating his claims.

I also decline to afford "special solicitude" to Plaintiffs Melissa Liu and Danping Li. The Plaintiffs co-signed and jointly filed all pleadings relevant to the motion to dismiss.[4] The pleadings do not provide any information about which of the three Plaintiffs prepared their filings, except to indicate, as noted, that only Lance Liu has provided an email address and is thus receiving electronic court notices. (ECF No. 2.) I ordered the Plaintiffs to file separate sworn statements describing the role that Lance Liu played in drafting their joint filings. They did not file separate sworn statements as required, but jointly signed an unsworn response arguing that they are all entitled to special consideration as *pro se* litigants. Permitting these litigants to retain their special status while also having a licensed attorney co-sign their filings would "tilt the scales of justice unfairly in their favor and against their opponents." *Tracy*, 623 F.3d at 104 (alterations omitted). I will therefore treat all documents co-signed by Lance Liu as having been filed by an attorney, and I will afford the Plaintiffs no "special solicitude" in reviewing those documents.[5]

---

[4] Some filings, not relevant to the motion to dismiss, were filed by Lance Liu alone or by Lance Liu and only one other Plaintiff. (*See, e.g.*, ECF No. 40 (motion for extension of time for service signed by Lance Liu and Danping Li); ECF Nos. 51 & 57 (motions for sanctions signed by Lance Liu).)

[5] I add, however, that I would reach the same result as to each issue discussed in this ruling even if I did construe the Plaintiffs' papers liberally "to raise the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006). Even *pro se* plaintiffs must plead enough facts to state a plausible claim for relief, must comply with Fed. R. Civ. P. 9(b), and must plead facts to show they have standing. Here, for the reasons discussed below, the Plaintiffs' conclusory allegations fail to comply with those requirements, and no amount of liberal construction would change that conclusion.

**B. The Second Amended Complaint Does Not State a Claim Under RICO**

To plead a civil RICO claim, the Plaintiffs must allege "that they were injured by Defendants' conduct of an enterprise through a pattern of racketeering activity." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004). Plaintiffs may allege a "pattern of racketeering activity" by setting forth facts showing that "(1) the defendant[s] committed at least two predicate acts of racketeering within ten years of one another, *see* 18 U.S.C. § 1961(5); (2) that these racketeering predicates are interrelated; and (3) that they reveal continued, or the threat of continued, racketeering activity . . . ." *United States v. Diaz*, 176 F.3d 52, 93 (2d Cir. 1999). Section 1961(1) sets out a list of criminal offenses that constitute "racketeering activity." "This list is exclusive." *Harvey v. Harvey*, 931 F. Supp. 127, 130 (D. Conn. 1996), *aff'd*, 108 F.3d 329 (2d Cir. 1997). Where a plaintiff alleges racketeering acts including fraud, the pleading requirements of Fed. R. Civ. P. 9(b) apply. *See Rivera v. Golden Nat. Mortg. Banking Corp.*, No. 04-cv-4545-RMB, 2005 WL 1514043, at *3 (S.D.N.Y. June 27, 2005), *aff'd*, 201 F. App'x 799 (2d Cir. 2006). Under Rule 9(b), a plaintiff "must allege the circumstances constituting fraud with particularity, including the relevant details of each act, such as when it was committed and how it was fraudulent." *Id.*

**i. The Racketeering Acts Identified in the Complaint Do Not Support a RICO Claim**

Here, the Plaintiffs claim that "Defendant Gelormino'[s] actions satisfied . . . RICO's two predicate offenses requirement with at least two separate violations of 18 U.S.C. § 1341 [mail fraud] and at least two separate violations of 18 U.S.C. § 1708 [theft of mail] as well as at least [one] violation of 18 U.S.C. § 1832(a) [theft of trade secrets]." (Second Amended Complaint, ECF No. 27 at 8 ¶ 64.) It is difficult to discern how this conclusory assertion maps onto the

factual allegations in the complaint. The Plaintiff's RICO Case Statement explains that the "two predicate offenses based on Mail Fraud" consist of Gelormino's stealing checks out of A-1 Auto's mailbox. (*See* ECF No. 38 ¶ 5(c).) Stealing checks out of the mail is not mail fraud—it is a violation of 18 U.S.C. § 1708, which does not provide a private cause of action and is not an enumerated RICO predicate. *See Lath v. Oak Brook Condo. Owners' Ass'n*, No. 16-CV-463-LM, 2017 WL 1051001, at *15 (D.N.H. Mar. 20, 2017) ("To be sure, the federal criminal code makes it unlawful to . . . steal mail, *see* 18 U.S.C. § 1708 . . . . And, while plaintiff may have alleged facts that would support a claim that one or more of the defendants obstructed or stole his mail . . . . those crimes do not qualify as racketeering activity for purposes of the RICO statute."). As a result, even if Gelormino stole checks from A-1 Auto's mail, those thefts would not constitute "racketeering activity" under the RICO statute.

The Plaintiffs also have not alleged facts sufficient to show that Gelormino's conduct with respect to the sale of A-1 Auto's assets to Melissa Liu constitutes mail fraud. "Mail fraud occurs whenever a person, having devised or intending to devise any scheme or artifice to defraud, uses the mail for the purpose of executing such scheme or artifice or attempting so to do." *Curtis v. Law Offices of David M. Bushman, Esq.*, 443 F. App'x 582, 584 (2d Cir. 2011) (quotation marks omitted). "In addition to alleging the particular details of a fraud, the plaintiffs must allege facts that give rise to a *strong* inference of fraudulent intent." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004) (quotation marks omitted).

Here, the Plaintiffs do not allege that Gelormino used the mail in connection with the asset sale agreement. His alleged thefts from the mail occurred months after the asset sale was completed. (*See* ECF No. 27 at 5 ¶ 29, 7 ¶¶ 50–51.) Further, it is not clear how Gelormino's representations about the asset sale were fraudulent. For example, Gelormino allegedly

"promised to help Plaintiffs to obtain a dealer license within two months" of the asset sale, but ultimately "failed to help plaintiffs to obtain pre-approval from [East Windsor] for Windsor Auto Group." (ECF No. 27 at 4 ¶ 19, 5 ¶ 35.) Plaintiffs do not allege facts suggesting that Gelormino deliberately withheld assistance in obtaining a license or that he intended to do so when he entered the agreement. At most, Gelormino's failure amounts to breach of contract, not the type of criminal conduct prohibited by the mail fraud statute.

The Plaintiffs allege that some of Gelormino's claims about A-1 Auto's assets were untrue. Specifically, they assert that "Gelormino misrepresented the quality of the A-1 Assets and the earnings in the two years before the asset sales." (ECF No. 27 at 10 ¶ 2.) Such conclusory allegations are not entitled to a presumption of truth in considering a motion to dismiss, and they are not sufficiently specific to support a claim for fraud. *See* Fed. R. Civ. P. 9(b).[6] Nor is there any allegation about use of the mail to accomplish a fraudulent scheme related to the quality of A-1 Auto's assets.

Finally, the Plaintiffs claim that Gelormino misrepresented the rent that A-1 Auto paid to Chris Vitti for its lease, causing the plaintiffs to agree to overpay by $500 per month when Windsor Auto Group took over the lease.  (ECF No. 27 at 5 ¶ 30–32.) Vitti allegedly credited the overpayment against a debt that Gelormino owed him. (*Id.*) The Plaintiffs do not describe the circumstances of the misrepresentation or provide enough detail to determine when it occurred. *See* Fed. R. Civ. P. 9(b). They also do not allege that the misrepresentation involved the use of

---

[6] In their RICO Case Statement, the Plaintiffs state that Gelormino "misrepresented the quality of the assets with missing titles to cars and cars with broken engines." (ECF No. 38 at 3 ¶ 4.) Neither the Case Statement nor the second amended complaint describes any representations that Gelormino made about the titles of the cars owned by A-1 Auto. The Plaintiffs acknowledge that Gelormino informed them that five cars had mechanical problems, and the allegations in the Case Statement do not contradict that representation.

the mail. As a result, they have not stated a claim for a violation of the mail fraud statute, 18 U.S.C. § 1341.

The Plaintiffs next allege that Gelormino "offered a cash reward" to a former A-1 Auto employee to steal trade secrets. (*Id.* at 7 ¶ 60, 8 ¶ 62–63, 10 ¶ 3, 11 ¶ 3–4.) Theft of trade secrets in violation of 18 U.S.C. § 1832 was added as a RICO predicate in 2016. *See* Defend Trade Secrets Act of 2016, Pub. L. No. 114-153 § 3(b), 130 Stat. 376, 382. Section 1832 of the criminal code prohibits the stealing, copying, or receiving of a "trade secret" with intent to convert the secret "to the economic benefit of anyone other than the owner thereof . . . ." 18 U.S.C. § 1832. Information is a "trade secret" if (1) the owner "has taken reasonable measures to keep such information secret," and (2) "the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). The Plaintiffs do not provide any information about what trade secret Gelormino attempted to steal. "The sine qua non element of a violation of either § 1831 or § 1832 is that the misappropriated information must fit the definition of a trade secret contained in 18 U.S.C. § 1839." U.S. Dep't of Justice, *U.S. Attorney's Manual: Criminal Resource Manual* § 1132 (1999). Absent any information about the trade secret, apart from the conclusory allegation that the information Gelormino attempted to steal meets the definition in the statute, the Plaintiffs have not alleged facts sufficient to support an inference that Gelormino violated 18 U.S.C. § 1832.[7]

---

[7] The Plaintiffs also do not explain who owned the trade secrets in question. If the trade secrets were owned by A-1 Auto, then the Plaintiffs would not have statutory standing to assert RICO claims based on the alleged theft for the reasons explained below. If the trade secret belonged to Lance Liu, it is unclear how its theft could serve as a predicate for the RICO claims brought by Melissa Liu and Danping Li. Further, the Plaintiffs do not allege that Gelormino was *successful* in stealing trade secrets. Thus, they do not appear to have suffered any injury as a result of this alleged racketeering act.

In their RICO Case Statement, the Plaintiffs assert that Gelormino committed two additional racketeering acts that are not included in the second amended complaint or the proposed third amended complaint. (*See* ECF No. 38 at 1–2 ¶ 1.) First, Gelormino allegedly claimed "to have a friend in the FBI who [could] arrest people . . . ." (*Id.* at 2.) He used this connection "to blackmail people, like Michael Singer from testifying against him." (*Id.*) The Plaintiffs claim that Michael Singer "is a material witness in this case." (*Id.* at 2.) They do not describe the circumstances of the alleged blackmail or explain how Mr. Singer's testimony would be relevant. Second, Gelormino allegedly claimed to "have friends in the Connecticut Motor Vehicle Department" that he could call "to cause trouble to Plaintiffs and used it to blackmail the Plaintiffs." The Plaintiffs again fail to describe the circumstances surrounding the alleged blackmail. As a result, the RICO Case Statement fails to show that the additional alleged conduct would amount to predicate offenses under 18 U.S.C. § 1961.

### ii. The Plaintiffs Lack Statutory Standing Under RICO

Even if Gelormino's conduct constitutes the requisite racketeering activity under RICO, the plaintiffs lack statutory standing to bring their claims. The RICO statute creates a civil cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 . . . ." 18 U.S.C. § 1964(c). Courts have interpreted this provision to require that a RICO plaintiff's injury be "direct" and "foreseeable," as well as "proximately caused by a pattern of racketeering activity violating 18 U.S.C. § 1962 or by individual RICO predicate acts." *Baisch v. Gallina*, 346 F.3d 366, 373 (2d Cir. 2003) (quotation marks and alterations omitted). None of the Plaintiffs' alleged injuries are cognizable under RICO.

Melissa Liu alleges that she "lost her money from the A-1 Assets she purchased from Defendant Gelormino." (*Id.* at 7 ¶ 58). Melissa Liu allegedly paid $97,000 for A-1 Auto's

inventory, equipment, and trade name. (ECF No. 27 at 5 ¶ 29.) The Plaintiffs do not state any

facts suggesting that Gelormino failed to deliver these assets. Gelormino allegedly failed to pay

A-1 Auto's sales tax for August 2017. (*Id.* at 6 ¶ 46.) He also allegedly stole two checks intended

for A-1 Auto and "embezzled money from A-1 Assets." (*Id.* at ¶ 36.) At most, these claims

support an inference that A-1 Auto suffered financial injuries as a result of Gelormino's

misdeeds. Similarly, the Plaintiffs allege that Gelormino's misrepresentation about the rent under

A-1 Auto Group's lease with Vitti induced Windsor Auto Group to overpay by $500 when it

took over the lease. "[I]t is well-settled that shareholders, officers, and employees lack standing

to bring a civil RICO claim for harm to their corporation." *Infanti v. Scharpf*, 570 F. App'x 85,

88 (2d Cir. 2014). Melissa Liu does not have standing under the RICO statute to assert claims for

injuries suffered by A-1 Auto or Windsor Auto Group, both of which are allegedly limited

liability companies, even if she was the managing member. (*See* ECF No. 27 at 2 ¶ 1, 4 ¶ 27, 6 ¶

42.)

Danping Li alleges that she lost "loan money" that she provided to A-1 Auto. (*Id.* ¶ 57).

A "creditor generally sustains injury only because [s]he has a claim against the corporation. The

creditor's injury is derivative of that of the corporation and is not caused proximately by the

RICO violations." *Manson v. Stacescu*, 11 F.3d 1127, 1130 (2d Cir. 1993); *see also id.* at 1132

("There are sound reasons for limiting standing under RICO to plaintiffs whose injuries are

personal and directly caused by the RICO violations, particularly when the primary victim of the

RICO conspiracy is a corporation."). Danping Li cannot bring a RICO claim based solely on her

loan to A-1 Auto.

Finally, Lance Liu alleges that he "lost compensation" and had to pay part of Melissa Liu

and Danping Li's losses. (*Id.* at 8 ¶ 66.) "[An] employee's injury generally is derivative of that of

the corporation and does not satisfy RICO's proximate cause requirement." *Manson*, 11 F.3d at 1132. To the extent that Lance Liu's injury depends on injuries suffered by Danping Li and Melissa Liu, his claim is derivative and fails for the same reasons as theirs.

### iii.    The Plaintiffs Allegations Against Kaczmarcyk Are Conclusory

The second amended complaint fails to state a claim against Kaczmarcyk. "Section 1962(c) makes it unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Reves v. Ernst & Young*, 507 U.S. 170, 177 (1993) (quotation marks and alterations omitted). "In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." *Id.* at 179. Here, the Plaintiffs fail to allege facts suggesting that Kaczmarcyk personally committed any racketeering acts or that she participated in directing the affairs of the alleged enterprise. The Plaintiffs claim that Kaczmarcyk "worked behind the scene and is also the brain and main beneficiary of Defendant Gelormino's actions." (ECF No. 27 at 8 ¶ 68.) Such conclusory allegations are not entitled to a presumption of truth in considering a motion to dismiss. *See Iqbal*, 556 U.S. at 678. The Plaintiffs also assert that Kaczmarcyk benefitted from Gelormino's conduct because he deposited the proceeds from his thefts into her account. (ECF No. 27 at 7 ¶¶ 50–51.) They do not claim that Kaczmarcyk was aware of the source of the money or allege any facts that would support such an inference. As a result, they have failed to state a claim against Kaczmarcyk.

### C.  The Second Amended Complaint Does Not State a Claim Under the Defend Trade Secrets Act of 2016

The Defend Trade Secrets Act ("DTSA") of 2016 creates a private civil cause of action for plaintiffs alleging misappropriation of trade secrets. *See* 18 U.S.C. § 1836. A plaintiff asserting claims under the DTSA must show

> (1) the existence of a trade secret, defined broadly as information with independent economic value that the owner has taken reasonable measures to keep secret, and (2) misappropriation of that secret, defined as the knowing improper acquisition and use or disclosure of the secret.

*Par Pharm., Inc. v. QuVa Pharma, Inc.*, No. 18-2177, 2019 WL 1758468, at *3 (3d Cir. Apr. 3, 2019).

Here, the Plaintiffs allege that Gelormino hired a former employee "to steal trade secret[s] from Plaintiff Lance Liu and from A-1 Auto." (ECF No. 27 at 11 ¶ 1.) Lance Liu learned of the scheme when the former employee discussed it with Gelormino over a speaker phone with Lance Liu present. (*Id.* ¶ 3.) The Plaintiffs claims under DTSA are vague and conclusory. (*E.g.*, *id.* ¶ 4 ("Defendant Gelormino used stolen trade secret and/or confidential information from Plaintiff Lance Liu and from A-1 Auto to do harm to them.").) As noted above, the Plaintiffs offer no hint at what the relevant trade secrets might be. Nor do they allege facts showing that Gelormino actually succeeded in misappropriating any trade secrets. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to "nudge [the Plaintiffs'] claim[s] . . . across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 678, 683. Indeed, the facts alleged suggest that the scheme to steal trade secrets was exposed by an employee sympathetic to the Lius before it was implemented. The Plaintiffs' DTSA claim is therefore dismissed.

### D.  The Proposed Third Amended Complaint Would Not Remedy the Foregoing Defects

After the Defendants filed a motion to dismiss the second amended complaint, Plaintiff Lance Liu moved for leave amend the complaint for a third time. (ECF No. 42.)[8] I denied the motion without prejudice, noting that the Plaintiffs had already amended their complaint once in response to the Defendants' motion to dismiss, and allowing them to amend again before I ruled on the renewed motion to dismiss would prejudice the Defendants. (ECF No. 67.) I explained that, if I granted the motions to dismiss, I would also determine whether the Plaintiffs should be given another opportunity to amend. I have therefore reviewed the proposed third amended complaint to determine whether the amendment would remedy the defects addressed above. I conclude that it would not.

Count One of the proposed third amended complaint ("PTAC"), alleging civil violations of the RICO, is identical to Count One in the second amended complaint addressed above. (*Compare* Proposed Third Amended Complaint, ECF No. 42-1 at 2–9; *with* Second Amended Complaint, ECF No. 27 at 1–9.)

Count Five differs slightly between the second amended complaint and the PTAC. Count Five in the second amended complaint is captioned "Violation of the Defend Trade Secrets Act of 2016." (ECF No. 27 at 11.) In the PTAC, Count Five includes an additional sub-caption: "Liu's claims against Defendant Gelormino and Defendant Kaminski." (ECF No. 42-1 at 11–12.) While the second amended complaint names only Gelormino, the PTAC alleges that proposed-defendant Scott Kaminski also violated the DTSA. (*Id.*) The PTAC names Kaminski as the "former

---

[8] The Plaintiffs previously amended their complaint (1) in response to an Order to Show Cause in which the Court noted, *sua sponte*, that the original complaint did not allege a basis for the Court's subject matter jurisdiction, (ECF No. 8); and (2) after the Defendants moved to dismiss the first amended complaint and I provided the Plaintiffs with an opportunity to amend to address the defects identified in the motion, (ECF No. 25). In the second order, I warned that I would "not allow further amendments after June 19, 2018." (*Id.*) Plaintiffs Danping Li and Melissa Liu did not sign the motion to amend or the proposed third amended complaint.

employee" that Gelormino paid to steal Lance Liu's trade secrets. (*Id.*) The substantive allegations are otherwise identical, and the addition of Kaminski would not alter my analysis above. Thus, the PTAC fails to allege facts showing that (1) a trade secret existed under the definition in the DTSA, or (2) Gelormino and Kaminski misappropriated any trade secret.

Finally, the PTAC adds an additional count, ostensibly under RICO. Lance Liu alleges that proposed-defendant Scott Kaminski impersonated him at an AutoZone store and ordered $4,000 worth of auto parts, claiming that they were for A-1 Auto. (ECF No. 42-1 at 12 ¶¶ 3–4.) AutoZone employees allegedly colluded with Kaminski "to impersonate and to defraud Plaintiff Lance Liu" by failing to check Kaminski's identification. (*Id.* ¶ 6.) Kaminski acted at the direction of Gelormino. (*Id.* ¶¶ 14, 26.) AutoZone "refused to file a police report on the fraudulent actions of Defendant Kaminski" and "actively tr[ied] to hinder Plaintiff Lance Liu's efforts to uncover the full scope of the frauds." (*Id.* ¶ 9.) AutoZone threatened to stop supplying A-1 Auto with auto parts unless A-1 Auto paid the outstanding balance. (*Id.* ¶¶ 10–12.) AutoZone stopped its supply to A-1 Auto on August 28, 2018. (*Id.*)

The additional count in the PTAC does not remedy the defects in the second amended complaint. First, the Plaintiffs do not specify how the alleged AutoZone scheme falls within one of the enumerated crimes in the RICO statutes. 18 U.S.C. § 1961(1). Lance Liu does not allege that the scheme involved the use of wires or the mail, and thus he has not stated a claim for mail or wire fraud. *See* 18 U.S.C. §§ 1341 and 1343. He does not allege that Kaminski's impersonation involved any identification documents—indeed, he claims that AutoZone is liable in part because its employees failed to request identification. His claims therefore do not implicate the prohibition on fraud in connection with identification documents under 18 U.S.C. § 1028. Second, the PTAC does not suggest that Lance Liu personally suffered harm, either financial or reputational, as a

result of the scheme. The only injury appears to be to A-1 Auto, which was billed for unwanted auto parts and had its supply of parts from AutoZone cut off. As a result, Lance Liu lacks statutory standing under RICO to assert his claim. Finally, even if this impersonation scheme could serve as a predicate act under RICO, the PTAC would still fail because, for the reasons explained above, it does not allege a *second* racketeering act as required to show a "pattern of racketeering activity."

### E. The Court Will Not Exercise Supplemental Jurisdiction Over the Plaintiffs' Remaining State Law Claims

District courts have supplemental jurisdiction over state-law claims that "form part of the same case or controversy" as the claims giving rise to the court's original jurisdiction. 28 U.S.C. § 1367(a). A court "may decline to exercise supplemental jurisdiction," however, if it "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). Courts determine whether to exercise supplemental jurisdiction by "balanc[ing] the traditional values of judicial economy, convenience, fairness, and comity . . . ." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006). The Supreme Court has strongly counseled against exercising jurisdiction over state-law claims if all federal issues in a case have been eliminated before trial. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Here, the Plaintiffs' remaining claims implicate no federal interest. The Plaintiffs pleaded RICO and DTSA claims specifically in response to the Court's notice that their complaint did not otherwise state a basis for the Court's subject matter jurisdiction. (*See* ECF Nos. 8, 9 & 10.) Those claims have now been dismissed. No discovery has occurred in this case, and exercising supplemental jurisdiction over the Plaintiffs' state law claims would not

further the interest of judicial economy. As a result, the Plaintiffs' state law claims are dismissed without prejudice.

### F. The Court Will Not Impose Sanctions on Defense Counsel

Plaintiff Lance Liu has filed two motions for sanctions against Attorney Houston Putnam Lowry, counsel for the Defendants. (ECF Nos. 51, 57.)[9] Both motions allege that Attorney Lowry failed to disclose his clients' criminal activity to the Court. (*See* ECF No. 57 at 1 ("Houston Lowry knowingly failed to disclose Defendant Tracy Gelormino's ongoing activities to this Court and lied about his knowledge of his client's ongoing criminal activities.") Attorney Lowry also allegedly advised Gelormino to file a meritless petition for bankruptcy. (ECF No. 51 at 2.)

"A district court may impose sanctions under, *inter alia*, its inherent authority, section 1927 of title 28 of the United States Code, or Rules 11 or 26(g) of the Federal Rules of Civil Procedure." *Marshall v. City of Meriden*, No. 3:11-cv-577-JCH, 2017 WL 5513200, at *1 (D. Conn. Jan. 25, 2017), *adhered to on reconsideration*, No. 3:11-CV-577 (JCH), 2017 WL 5513202 (D. Conn. Mar. 13, 2017). "[A] federal court . . . may exercise its inherent power to sanction a party or an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (quotation marks omitted). Under Rule 11 an attorney presenting a paper to the court certifies that (1) it is not presented for an improper purpose; (2) the arguments or claims it contains are warranted by existing law or present a nonfrivolous argument for modifying existing law; (3) its factual contentions have evidentiary support or will likely have support after reasonable discovery; and (4) its denial of any factual contentions is warranted based on evidence or an asserted lack of knowledge. Fed. R. Civ. P. 11(b). A court may impose sanctions if it determines that the foregoing requirements have been violated. Fed. R. Civ. P. 11(c). A court

---

[9] Danping Li and Melissa Liu did not sign the motions.

will not impose sanctions under Rule 11 for factual dishonesty where "it is not clear that defense counsel's statement is false." *Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010). Finally, under Rule 26(g), a Court may impose sanctions for improper certification of discovery responses.

No sanctions are warranted in this case. Lance Liu levies several serious accusations against Attorney Lowry, but offers no admissible evidence to support his assertions. For example, Lance Liu claims that Attorney Lowry had notice of Tracy Gelormino's "ongoing criminal activities" because he made allegations about those activities to Attorney Lowry via email. (*See* ECF No. 61 at 1 ("As shown in the Affidavit of Lance Liu and the attached email notices from Lance Liu to Houston Lowry on 'ongoing criminal activities' of Defendant Tracy Gelormino, Houston Lowry is deemed to have knowledge of the 'ongoing criminal activities' of Defendant Tracy Gelormino.").) A defense attorney does not have an ethical obligation to report his or her client's misconduct to the court where the only notice of misconduct is the plaintiff's conclusory accusation. The Court has reviewed Attorney Lowry's filings in this case and finds no reason to conclude that they were improper. Accordingly, the motions for sanctions are DENIED.

## IV. Conclusion

For the foregoing reasons, the Defendants' motions to dismiss, (ECF Nos. 28 & 46), are GRANTED. The Plaintiffs' RICO and DTSA claims (Counts One and Five) are DISMISSED. The Plaintiffs' state law claims (Counts Two, Three, and Four) are DISMISSED without prejudice. Plaintiff Lance Liu's motions for sanctions, (ECF Nos. 51 & 57), are DENIED. Kaczmarcyk's motion for summary judgment, (ECF No. 66), is DENIED as moot. The Clerk is directed to close this case.

IT IS SO ORDERED.


_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                May 2, 2019